UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEMICA HARPER-COX,

         Plaintiff,

v.

GATEWAY-DETROIT EAST,
GATEWAY COMMUNITY HEALTH,
INC., and VIRGIL WILLIAMS,

         Defendants.

Case No. 14-13048

Hon. Patrick J. Duggan

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

On August 6, 2014, Plaintiff Lemica Harper-Cox ("Plaintiff") filed this employment discrimination lawsuit against her former employer Defendant Gateway-Detroit East, as well as Defendants Gateway Community Health, Inc., which owns the facility at which Plaintiff was employed, and Virgil Williams, Plaintiff's former supervisor (collectively, "Defendants"). In her Complaint, Plaintiff alleges claims arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 and 2000e-16(c), the Civil Rights Act of 1991, 42 U.S.C. § 1981a, as well as various claims arising under the laws of the State of Michigan.

Defendants answered Plaintiff's Complaint on September 5, 2014, and subsequently filed a "Motion to Dismiss Plaintiff's Claims" pursuant to Federal Rule of Civil Procedure 12(c). [1]  In this motion, Defendants seek dismissal of Plaintiff's Complaint on the basis of judicial estoppel.  Specifically, Defendants contend that Plaintiff should be judicially estopped from asserting her employment-related claims in this lawsuit because she failed to disclose the claims and took a contrary position in her voluntary Chapter 13 bankruptcy proceeding. The pending motion has been fully briefed.  Having determined that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons set forth herein, the Court will deny Defendants' Motion.

## I.      BACKGROUND

## A.      Factual Background and Institution of the Present Civil Action

Because neither the merits of Plaintiff's claims nor the sufficiency of Plaintiff's pleading is at issue in this action, the Court will not exhaustively detail the factual circumstances of Plaintiff's lawsuit or the allegations contained in the operative complaint.  Rather, the Court focuses its attention on the facts relevant to the determination of whether judicial estoppel should apply to bar Plaintiff's

---

[1] Motions filed pursuant to Rule 12(c) are properly labeled as motions for judgment on the pleadings.

2

claims.  In light of this, the Court deems it sufficient to summarize the claims as involving alleged sexual harassment of Plaintiff by her former supervisor, Defendant Williams.  The harassment caused Plaintiff to take medical leave, which the Complaint classifies as a reasonable accommodation for the mental and emotional impairments caused by Defendant Williams's conduct.  On May 10, 2013, while Plaintiff was out on medical leave, Defendants terminated Plaintiff's employment.

As a result of the conduct summarized above, Plaintiff filed a number of charges of discrimination with the Michigan Department of Civil Rights ("MDCR") and Equal Employment Opportunity Commission ("EEOC"). Plaintiff's first charge of discrimination alleged sexual and verbal harassment on account of gender, and was filed on March 11, 2013.  (Compl. Ex. A.)  The EEOC mailed Plaintiff a right-to-sue letter on April 9, 2014.  (Defs.' Mot. Ex. 10.[2]) Plaintiff's second charge, dated June 20, 2013, alleged a hostile work environment and retaliatory discharge as the result of the earlier charge of discrimination. (Compl. Ex. B.)  The third and final charge of discrimination lodged by Plaintiff was filed on January 21, 2014.  The EEOC mailed a right-to-sue letter corresponding with this charge on May 8, 2014. (Compl. Ex. D.)

---

[2] This right-to-sue letter was not attached to Plaintiff's Complaint.

Plaintiff instituted the present civil action by filing a seven-count complaint with this Court on August 6, 2014.  (ECF No. 1.)  Plaintiff's Complaint endeavors to state claims for violations of the ADA (Counts I-III), a violation of Title VII (Count IV), assault and battery against Defendant Williams (Count V), vicarious liability to hold Defendants Gateway-East and Gateway Community Health liable for the tortious acts of Defendant Williams (Count VI), and a violation of the Michigan Bullard-Plawecki Employee Right to Know Act (Count VII).

Defendants answered the Complaint on September 5, 2014.  (ECF No. 11.) In their Answer, Defendants did not affirmatively plead judicial estoppel as an affirmative defense, but rather generically listed "estoppel" among the various affirmative defenses set forth in the pleading.  Defendants filed the instant motion pursuant to Federal Rule of Civil Procedure 12(c) on October 22, 2014.  (ECF No. 14.)  After extending the response deadline twice, Plaintiff responded to Defendants' Motion on December 18, 2014.  (ECF No. 19.)  Defendants replied on January 9, 2015.  (ECF No. 20.)

**B.     Plaintiff's Chapter 13 Bankruptcy Proceedings**

On October 6, 2013, after Plaintiff had filed two of three charges of discrimination with the MDCR and EEOC but before filing the instant action, Plaintiff and her husband, with the assistance of counsel, filed a joint voluntary Chapter 13 bankruptcy petition, as well as the required schedules, in the United

4

States Bankruptcy Court for the Eastern District of Michigan.  (Bankruptcy Pet., Defs.' Mot. Ex. 2.)  Plaintiff also filed a Chapter 13 Plan and an Amended Chapter 13 Plan on October 6, 2013.  (Defs.' Mot. Exs. 3, 4.)  Two sections of the bankruptcy petition are of particular relevance here.

First, the "Schedule B – Personal Property" section of the bankruptcy petition, specifically item 21, required Plaintiff to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of debtor, and rights to setoff claims."  (Bankruptcy Pet. 10.[3])  It is undisputed that Plaintiff did not list her discrimination claim against Defendants.

Second, item 4 of the "Statement of Financial Affairs" section of the bankruptcy petition required Plaintiff and her husband to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case."  (*Id.* at 32.)  It is undisputed that the instant action is not listed in this section of the petition.

In December 2013, Plaintiff amended her schedules.[4]  (Defs.' Mot. Ex. 5.)  Plaintiff amended her schedules again and filed a second amended Chapter 13 Plan

---

[3] The page numbers correspond to the pagination as filed in the bankruptcy court and located on the bottom of each page.

[4] Pursuant to Federal Rule of Bankruptcy Procedure 1009(a), a debtor may amend a voluntary petition as a matter of course any time before the case is closed. *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003) (citing *Lucius v. McLemore*, 741 F.2d 125, 126 (6th Cir. 1984)).

on February 20, 2014.  (Defs.' Mot. Exs. 6, 7.)  Plaintiff filed a third amended

Chapter 13 Plan and amended schedules again on March 20, 2014.  (Defs.' Mot.

Exs. 8, 9.)  Plaintiff's schedules were amended once more on April 16, 2014.

(Defs.' Mot. Ex. 11.)  Notably, this last amendment came seven days after the

EEOC mailed the first of two right-to-sue letters. [5]  It is undisputed that none of

these amended plans or schedules referenced the EEOC charges that Plaintiff had

filed.

On May 7, 2014, the bankruptcy court entered an order confirming

Plaintiff's Chapter 13 plan.  (Defs.' Mot. Ex. 12.)  The following day, the EEOC

mailed Plaintiff a second right-to-sue notice in connection with the charges of

discrimination made in June 2013 and January 2014.  (Compl. Ex. D.)  Plaintiff

filed this lawsuit on August 6, 2014, at which point Plaintiff had not yet apprised

the bankruptcy court of her potential employment claims.

It is undisputed that all of Plaintiff's EEOC charges were pending at the time

Plaintiff filed her Chapter 13 petition and that the charges were not disclosed as

required by law.  Indeed, Plaintiff's Complaint in the present case was filed just

three months after the Bankruptcy Court entered an Order Confirming Plan.  It is

---

[5] The Sixth Circuit has adopted a rebuttable presumption that a plaintiff
receives a right-to-sue notice on the fifth day following the EEOC's mailing of the
notification.  *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*,
209 F.3d 552, 557 (6th Cir. 2000).  Under this presumption, Plaintiff had received
one of the two right-to-sue notices when she filed her corrected Statement of
Financial Affairs.

further undisputed that Plaintiff amended her bankruptcy filings on at least four occasions, and in none of these amendments did she disclose her potential employment-related claims against Defendants. Plaintiff contends that this failure to disclose was the result of advice from her attorney.

Indeed, as Defendants point out, Plaintiff did not so much as attempt to amend her bankruptcy filings to reflect the employment-related action until December 17, 2014, nearly two months after Defendants filed their motion for judgment on the pleadings in the present action. (Amended Schedules, Pl.'s Resp. Ex. C.) The bankruptcy trustee filed timely objections to the amended papers, objecting specifically to the amended claimed exemptions. (Trustee's Objection, Defs.' Reply Ex. 26.) Although the objection contains language critical of Plaintiff for failing to disclose the cause of action earlier, the trustee did not object to the bankruptcy court's acceptance of the amended schedules. (*Id.*) After a hearing upon the objection, and pursuant to a stipulation entered by the bankruptcy court on April 10, 2015, Plaintiff withdrew the amended claimed exemptions and the trustee withdrew his objection to the amended filing. *In re Cox*, Bankruptcy Case No. 13-58479, ECF No. 102 (E.D. Mich. Bankr. Apr. 10, 2015). As such, the amended schedules became the operative bankruptcy court documents, and the instant lawsuit is now part of the bankruptcy estate.

On April 16, 2015, an application to employ counsel in connection with Plaintiff's employment-related claim was filed with the bankruptcy court.  In an order dated June 3, 2015, the bankruptcy court approved the application, ordering that any proceeds received in connection with the non-bankruptcy legal matter (i.e., the instant action) be paid directly to the Chapter 13 Trustee.

## II.    GOVERNING LEGAL STANDARD

Federal courts review motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) using the standards applicable to motions filed under Rule 12(b)(6).  *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted).  Though litigants employ these procedural mechanisms at different stages of the proceedings, the purpose of both types of motions is to test the sufficiency of a plaintiff's pleadings.  Thus, as with Rule 12(b)(6) motions, a Rule 12(c) motion allows a court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P. 12(h)(2)(B) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c).")

As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

8

U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)).  While assessment of the facial sufficiency of a complaint must ordinarily be undertaken without regard to matters outside the pleadings, courts may "consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein without converting the motion into one for summary judgment."  *Rondigo, L.L.C. v. Twsp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (citation and alteration omitted).  When a Rule 12(c) motions presents matters outside the pleadings, a court must convert the motion to a motion for summary judgment pursuant to Rule 56 unless the district court excludes such matters.  *Max Arnold & Sons, L.L.C. v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).

Here, the parties have presented materials to the Court which are outside of the pleadings.  *See* Fed. R. Civ. P 7(a) (defining pleadings as a complaint, answer to a complaint, answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and, if ordered by a court, a reply to an answer).  Specifically, Defendants have submitted copies of Plaintiff's bankruptcy filings and Plaintiff has submitted orders from the bankruptcy court as well as letters from her bankruptcy counsel.  Because

the bankruptcy proceedings are a matter of public record, and because the Court
has excluded the letters from Plaintiff's bankruptcy counsel, the Court construes
the present motion as one for judgment on the pleadings pursuant to Rule 12(c).

### III.   DISCUSSION

Defendants assert that under prevailing case law in this circuit, the doctrine
of judicial estoppel prevents Plaintiff from prosecuting this lawsuit because
Plaintiff failed to advise the bankruptcy court of her potential cause of action
against Defendants.  Conversely, Plaintiff contends that the Court should decline to
apply judicial estoppel because the nondisclosure was inadvertent, based on the
advice of her bankruptcy attorney, and she ultimately filed an amendment
reflecting this lawsuit.

The doctrine of judicial estoppel is a discretionary equitable doctrine
"utilized in order to preserve the integrity of the courts by preventing a party from
abusing the judicial process through cynical gamesmanship."  *White v. Wyndham
Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (internal quotation
marks and quotation omitted); *see also New Hampshire v. Maine*, 532 U.S. 742,
749, 121 S. Ct. 1808, 1814 (2001) (explaining that judicial estoppel "generally
prevents a party from prevailing in one phase of a case on an argument and then
relying on a contradictory argument to prevail in another phase"); *Reynolds v.
Comm'r of Internal Revenue*, 861 F.2d 469, 472-73 (6th Cir. 1988) ("Courts have

10

used a variety of metaphors to describe the doctrine, characterizing it as a rule against playing fast and loose with the courts, blowing hot and cold as the occasion demands, or having one's cake and eating it too.  Emerson's dictum that a foolish consistency is the hobgoblin of little minds cuts no ice in this context.") (internal quotation marks and citations omitted).  The Supreme Court of the United States has indicated that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle[.]"  *New Hampshire*, 532 U.S. at 750, 121 S. Ct. at 1815 (quotation omitted).  It has, however, identified three considerations that courts should weigh when determining whether to apply judicial estoppel: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *Id.* at 750-51, 121 S. Ct. at 1815.  In the bankruptcy context, case law from the United States Court of Appeals for the Sixth Circuit substitutes the third line of inquiry with a requirement that "the debtor's omission did not result from mistake or inadvertence."  *Javery v. Lucent Techs., Inc. Long Term Disability Plan for*

*Mgmt. or LBA Employees*, 741 F.3d 686, 698 (6th Cir. 2014). This substitution

may result from a recognition that "the doctrine is intended to protect the judicial

system, *rather than the litigants*, [and, as a result,] detrimental reliance by the

opponent of the party against whom the doctrine is applied is not necessary." *In re*

*Coastal Plains, Inc.*, 179 F.2d 197, 205 (5th Cir. 1999); *see also Reynolds*, 861

F.2d at 472 ("The purpose of the doctrine is to protect the courts from the

perversion of judicial machinery.") (internal quotation marks and citation omitted);

*McNemar v. Disney Store, Inc.*, 91 F.3d 610, 616 (3d Cir. 1996) ("The doctrine of

judicial estoppel serves a consistently clear and undisputed jurisprudential purpose:

to protect the integrity of the courts.").

      Sixth Circuit precedent instructs that the doctrine "be applied with caution to

'avoid impinging on the truth-seeking function of the court, because the doctrine

precludes a contradictory position without examining the truth of either

statement.'" *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004)

(quotation omitted); *see also White*, 617 F.3d at 486-87 (Clay, J. dissenting)

(noting that the doctrine of judicial estoppel often yields harsh results). Despite

this cautionary note, the Sixth Circuit has applied principles of judicial estoppel to

bar a debtor's prosecution of a claim that was not disclosed to the bankruptcy

court. *See, e.g.*, *Javery*, 741 F.3d at 697-98 (noting that the Sixth Circuit has

"applied the doctrine [of judicial estoppel] to bar employment related claims not

disclosed in prior bankruptcy proceedings"); *White*, 617 F.3d 472 (holding that claimant was estopped from pursuing a sexual harassment claim against a former employer because she did not disclose the claim during her bankruptcy proceedings); *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002); *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 425 (6th Cir. 2005) (unpublished). "Applying judicial estoppel under these circumstances recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets[.]" *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013) (unpublished) (citations omitted).

Defendants have come forward with a copy of Plaintiff's bankruptcy petition, as well as the subsequent amendments thereto. A review of these documents reveals that Plaintiff asserted a position in the bankruptcy court which was contrary to her position in this court. As set forth in the factual background section of this Opinion and Order, at the time Plaintiff filed her bankruptcy petition, she had lodged two charges of discrimination with the EEOC. Despite amending the petition no less than four times between October 2013 and April 2014, Plaintiff did not divulge the existence of any claims against her former employer. As in *White*, Plaintiff's filing of the instant lawsuit is inconsistent with the position that she asserted before the bankruptcy court by filing a sworn petition (signed under the penalty of perjury) and Schedule B omitting any reference to her

13

employment-related causes of action, despite the fact that such disclosures are plainly mandated by the Bankruptcy Code.  Further, the bankruptcy court adopted Plaintiff's contrary position when it entered an Order confirming Plaintiff's Chapter 13 Plan on May 7, 2014.  (Defs.' Mot. Ex. 12.)

However, in this Court's estimation, the publicly-available documents produced by Defendants, as well as subsequent developments transpiring in the bankruptcy court, caution against application of judicial estoppel given the unique facts and circumstances present in this case.  The bankruptcy court became aware, albeit belatedly, of Plaintiff's cause of action when her bankruptcy attorney filed amended schedules in December 2014.  The Chapter 13 Trustee did not object to the bankruptcy court's acceptance of the amended filings, rather, he objected only to certain claimed exemptions.  These exemptions were subsequently withdrawn and the amended schedules were accepted by the bankruptcy court.

Later, the bankruptcy court explicitly authorized Plaintiff to prosecute this action despite the initial and continuing failure to disclose the employment claims by approving the continued employment of Plaintiff's attorney in this action and by ordering that any and all potential proceeds of the action be paid directly to the trustee.  Under these circumstances, it cannot be said "that judicial acceptance of an inconsistent position in a later proceeding would create the perception that

14

either the first or the second court was misled[.]"[6] *New Hampshire*, 532 U.S. at 750-51, 121 S. Ct. at 1815.

Because "[t]he purpose of the doctrine is to protect the courts from the perversion of judicial machinery[,]" *Reynolds*, 861 F.2d at 472, and because the bankruptcy court has permitted Plaintiff to pursue this cause of action (implicitly acknowledging that such a course of action is preferable to Plaintiff's creditors), the Court simply sees no basis for applying judicial estoppel to bar Plaintiff's employment claims, as such a result would impinge upon this Court's truth-seeking function.

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that it is not appropriate to apply the discretionary doctrine of judicial estoppel to bar Plaintiff from proceeding with her employment claims against Defendants.

Accordingly,

**IT IS ORDERED** that Defendants' Motion seeking judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is **DENIED**.

---

[6] The Court notes that the authorities relied upon by Defendants in their moving papers do not involve a factual scenario similar to what occurred here.  In the cases they rely upon, the bankruptcy court never approved – either implicitly or explicitly – the prosecution of the non-bankruptcy matter.  By contrast, the bankruptcy court gave Plaintiff the green light to pursue her employment claims in this Court.

15

Dated: June 11, 2015

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Thomas R. Warnicke, Esq.**
**Bradley M. Taormina, Esq.**
**Larry R. Jensen , Jr., Esq.**